DONALD H. MASSEY AND BERTHA M. MASSEY, HIS WIFE, APPELLANTS, *v.* RALPH J. LITTON, M.D., RESPONDENT.

No. 14236

September 27, 1983                                    669 P.2d 248

[Rehearing denied December 15, 1983]

*Eric Zubel,* Las Vegas, for Appellants.

*Galatz, Earl & Catalano, Daniel F. Polsenberg,* Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Appellant, Bertha Massey, sued respondent, Ralph J. Litton, M.D., for malpractice. Respondent moved to dismiss on the ground that the statute of limitations barred the claim. The court granted this motion and certified its order pursuant to NRCP 54(b).[1] Appellant appeals arguing that the district court erred in its construction of the statute of limitations. We agree. We therefore reverse and remand this matter for further proceedings consistent with this opinion.

### THE FACTS

On July 27, 1976, respondent doctor performed a hip replacement operation on appellant. After surgery, appellant's leg was placed in a traction device. When appellant complained of pain, attending nurses advised appellant that the device was not to be altered; that the postoperative pain was not unusual.

On or about August 11, 1976, according to appellant's complaint, appellant "first discovered that she lacked any feeling or sensation in the toes of her left foot, [and] left leg between the ankle and the knee. [She also] noticed that the toes of her left foot appeared curled downward and [she] was unable to exercise any motor control in the region of her lower left leg and foot. [Upon inquiry she] was told that it was not unusual or permanent and that physical therapy would result in an improvement thereof." If caused by nerve damage, such a condition is known as "dropped foot."

Appellant continued under respondent's care for many months. Respondent never indicated that the condition would not improve until January 3, 1977, when he expressed his inability to explain appellant's condition. Respondent ordered an electromyograph (EMG) in February; on March 15 he wrote that he was at a "total loss" to explain appellant's condition.

---

[1] As respondent had requested the district court to consider material outside of the pleadings, the motion should have been treated as one for summary judgment pursuant to NRCP 12(b) and 56.

On or about May 4, 1977, appellant received the EMG results. A consulting physician diagnosed palsy with no evidence of reinnervation.

On July 28, 1978, appellants (patient and her husband) filed an initial complaint against Sunrise Hospital alleging negligent care by it and its employees. Also on that date she filed a petition with the Nevada Medical-Legal Screening Panel, as a statute then applicable required. NRS 41A.050-080.[2] The petition alleged that Dr. Litton had been negligent in his care and treatment.

On or about April 12, 1979, the Screening Panel mailed to appellant its decision that she had failed to establish by sufficiently convincing evidence a reasonable possibility that respondent had been negligent. Appellants moved to amend their complaint and join Dr. Litton as a party on August 15, 1979. The district court granted their motion and on September 11, 1979, they filed the amended complaint. Appellant alleged negligence in failing to advise her of the risk of the dropped foot and negligence in failing to instruct the attending nurses in the proper care of her leg when in traction.

Respondent moved to dismiss on the ground that the statute of limitations began to run on August 11, 1976, the date appellant "discovered" her dropped foot. Appellants responded by a second amended complaint alleging the facts of postoperative treatment noted above. Respondent again moved to dismiss on the same grounds. Respondent argued that the continuing physician-patient relationship did not extend the time appellant "discovered" the numbness and paralysis, and consequently the statute still ran commencing August 11, 1976.

Appellants responded by filing a third complaint amended to add another count against the hospital. Respondent renewed his motion to dismiss and it was granted on April 16, 1982. This appeal followed.

### THE MEANING OF INJURY AS USED IN THE STATUTORY DISCOVERY RULE

We first must decide what "injury" means as used in the statutory discovery rule for malpractice, NRS 41A.097(1).[3]

---

[2]Repealed by 1981 Nev. Stat. ch. 327, sec. 15, at 599.

[3]NRS 41A.097(1) provides in pertinent part:

1. Except as provided in subsection 2, an action for injury or death against a provider of health care shall not be commenced more than 4 years after the date of injury or 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:

Respondent argues that it means physical damage only: a plaintiff actually or constructively discovers his or her "injury" when the damage becomes physically manifest. Under this theory, the statute began to run on August 11, 1976. Appellants contend, however, that the term "injury" encompasses not only the physical damage but also the negligence causing the damage. We agree with appellants.

Since our statute uses the term "injury" we look to decisions construing statutes worded similarly. In these jurisdictions, the statute generally runs from the date the plaintiff knew or should have known (*i.e.,* actual or constructive discovery) of his or her "injury." *See* 2 S. Pegalis & H. Wachsman, American Law of Medical Malpractice sec. 6.8 at 21-38 (1981).

"Injury" could mean the allegedly negligent act or omission; the physical damage resulting from the act or omission; or the "legal injury," *i.e.,* all essential elements of the malpractice cause of action. Although two courts have adopted the first meaning, Landgraff v. Wagner, 546 P.2d 26, 33 (Ariz.App.), *appeal dismissed,* 429 U.S. 806 (1976), Dunn v. St. Francis Hospital, Inc., 401 A.2d 77, 80 (Del. 1979), we find such an interpretation defeats the purpose of a discovery rule. *See* 2 Pegalis & Wachsman, *supra,* sec. 6.7 at 19-20 (1981).

The physical damage meaning was used in Peralta v. Martinez, 564 P.2d 194, 197 (N.M.App.), *cert. denied,* 567 P.2d 485 (N.M. 1977). The court held that the "injury" occurred for limitations purposes on the date the injury manifested itself in a physically objective and ascertainable manner. The case involved a sponge left behind during prior surgery. In such circumstances, discovery of the physical injury is actually simultaneous with discovery of the only possible cause, and obvious negligence. In contrast, the damage here was consistent with postoperative recovery, and treatment was continued under the operating doctor who reassured the patient that there was no permanent damage. We think the physical damage test fails adequately to account for all relevant factors in this type of a case.

■■■■

We find that the above meanings would unfairly bar the suit of a patient acting reasonably in trusting his doctor and relying upon his advice. We hold that "injury" as used in NRS 41A.097(1) means legal injury. The Utah Supreme Court,

(a) Injury to or wrongful death of a person based upon alleged professional negligence of the provider of health care;

. . . .

(c) Injury to or wrongful death of a person from error or omission in practice by the provider of health care.

arriving at the same conclusion, stated the underlying rationale:

> While the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time. . . . [W]hen injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right.
>
> Furthermore, to adopt a construction that encourages a person who experiences an injury, dysfunction or ailment, and has no knowledge of its cause, to file a lawsuit against a health care provider to prevent a statute of limitations from running is not consistent with the unarguably sound proposition that unfounded claims should be strongly discouraged. . . .
>
> It would also be imprudent to adopt a rule that might tempt some health care providers to fail to advise patients of mistakes that have been made and even to make efforts to suppress knowledge of such mistakes in the hope that the running of the statute of limitations would make a valid cause of action nonactionable.

Foil v. Ballinger, 601 P.2d 144, 147-148 (Utah 1979).

Having decided that "injury" means legal injury, we now determine when the patient "discovers" her legal injury. In *Ballinger,* the court held that the statute begins to run when the injured person knows or should know that he has suffered a legal injury. *Id.* Thus the discovery may be either actual or presumptive. Our statute similarly provides for actual or presumptive discovery. NRS 41A.097(1).

This construction is in accord with the majority view in construing statutory and common law discovery rules. The discovery may be either actual or presumptive, but must be of both the fact of damage suffered and the realization that the cause was the health care provider's negligence. *See* 1 D. Louisell & H. Williams, Medical Malpractice sec. 13.07 at 13-24 n. 54, 13-25 (1983). *See also* Sanders v. Blunt, 357 S.2d 620, 621 (La.App. 1978); Brown v. Mary Hitchcock Memorial Hosp., 378 A.2d 1138, 1140 (N.H. 1977); Lopez v. Swyer, 300 A.2d 563, 567 (N.J. 1973); Ohler v. Tacoma General Hosp., 598 P.2d 1358, 1360 (Wash. 1979). This rule has been clarified to mean that the statute of limitations begins to run when the

patient has before him facts which would put a reasonable person on inquiry notice of his possible cause of action, whether or not it has occurred to the particular patient to seek further medical advice. *See* Graham v. Hansen, 180 Cal.Rptr. 604, 609 (Cal.App. 1982); Sanchez v. South Hoover Hosp., 553 P.2d 1129, 1135 (Cal. 1976). The focus is on the patient's knowledge of or access to facts rather than on her discovery of legal theories. Graham v. Hansen, 180 Cal.Rptr. at 609-610. *See also* Louisell & Williams, *supra,* at 13-25.

We hold that a patient discovers his legal injury when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action.

Given our holding that "injury" encompasses discovery of damage as well as negligent cause, we cannot say that summary judgment was justified on the pleadings and facts presented. Appellant's discovery of *symptoms* of dropped foot does not necessarily mean that she had discovered negligence, or that she had cause to suspect negligence. Her doctor showed no great concern until several months later. She commended herself to his care and continuing treatment. "[T]he patient is fully entitled to rely upon the physician's professional skill and judgment while under his care, and has little choice but to do so. It follows, accordingly, that during the continuance of this professional relationship, which is fiduciary in nature, the degree of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminshed." Sanchez v. South Hoover Hospital, 553 P.2d at 1135.

On the basis of the facts revealed by this record, it is not clear that appellant either was, or should have been, aware of her cause of action at a date so early as to render the statute of limitations a bar to her claim. Accordingly, summary judgment was improper.

Reversed and remanded for proceedings consistent with this opinion.

MANOUKIAN, C. J., and SPRINGER, STEFFEN, and GUNDERSON, JJ., concur.