Charles D. METZGER, and Carolyn K. Metzger, Appellants (Plaintiffs),

v.

Hein H. KALKE, M.D., Ruqaiya Hussain, M.D., and Medical Center for Women, P.C., Appellees (Defendants).

No. 84–146.

Supreme Court of Wyoming.

Nov. 12, 1985.

Rick A. Thompson of Hathaway, Speight & Kunz, Cheyenne, and Rollin R. Bailey of Bailey, Polsky, Cada, Todd & Cope, Lincoln, Nebraska, for appellants.

Michael J. Sullivan, J. Kenneth Barbe and Jeffrey C. Brinkerhoff of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellees Kalke and Medical Center for Women, P.C.

J.E. Vlastos and Ann Rochelle of Vlastos, Reeves, Murdock & Brooks, P.C., Casper, for appellee Hussain.

Before THOMAS, C.J., and ROSE,* ROONEY, BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal stems from medical malpractice actions brought by appellants Charles and Carolyn Metzger, husband and wife, to recover damages allegedly resulting from the failure of appellees Ruqaiya Hussain, M.D., and Hein Kalke, M.D., to diagnose and properly treat the pituitary tumor from which Carolyn Metzger suffered. The district court dismissed appellants' claims against Hussain as barred by the statute of limitations applicable to medical tort actions, § 1-3-107, W.S.1977. The court granted Kalke's motion for summary judgment on the dual grounds that no dispute of material fact existed as to his professional conduct and that § 1-3-107 barred appellants' suits for alleged acts or omissions occurring prior to September 13, 1981. We will reverse the order of dismissal and the order granting summary judgment entered by the district court.

The record before us consists of the depositions of the parties, the depositions of appellants' expert witnesses, the transcript of the hearing on appellees' pretrial motions, and the pleadings. The record also contains affidavits of the Metzgers, their expert witness, and their attorney. These affidavits were served on appellees at the hearing on pretrial motions and were disallowed by the trial court except for purposes of determining the timeliness of appellants' suits. The parties have not appealed this ruling by the trial court. The following factual summary is based on the record allowed by the district court and designated on appeal and reflects only those points pertinent to the district court's judgment.

## FACTS

In December, 1979, Carolyn Metzger first contacted Dr. Hussain, a specialist in obstetrics and gynecology at the Medical Center for Women, P.C., in Gillette, Wyoming. Metzger remained under the care of Hussain until May 12, 1981, at which time the physician moved out of the state. Dr. Kalke, also a specialist at the Medical Center for Women, assumed the care of Metzger, who had become pregnant in late 1980. Kalke's last contact with Metzger was September 28, 1981, when he conducted a postpartum examination.

On December 19, 1981, Carolyn Metzger contacted an ophthalmologist in Lincoln, Nebraska, who diagnosed a pituitary tumor. The tumor was surgically removed December 22, 1981. Since that time, Metzger has been under the care of Arthur Annin, M.D., a specialist in internal medicine in Lincoln.

While Carolyn Metzger was hospitalized for surgery, Charles Metzger contacted Harvey Froscheiser, an attorney, and requested that he investigate the possible bases for legal action against appellees. No suit was filed at that time. The Metzgers state in their affidavits that they attempted without success in early 1982 to obtain Carolyn Metzger's medical records from appellees. Dr. Annin says in his affidavit that during the first half of 1982 he received only incomplete records concerning Carolyn Metzger's prior medical treatment and that such records were of no significance in evaluating the care provided by appellees. Annin says that he made no

* Retired November 1, 1985

statement about the treatment which appellees afforded Metzger until he expressed his concern to Attorney Froscheiser on July 15, 1982. Froscheiser states in his affidavit that he had no information from any knowledgeable source prior to July 15, 1982, of any wrongful acts by appellees.

Charles Metzger and Carolyn Metzger separately filed actions against Hussain, Kalke, and the Medical Center for Women on September 13, 1983. Carolyn Metzger claims damages for the physical and mental injuries suffered as a result of the undiagnosed tumor, and Charles Metzger seeks to recover for the loss of his wife's society. The trial court granted Hussain's motion to dismiss the complaints against her on the ground that they were barred by § 1–3–107, the applicable statute of limitations. The court entered summary judgment in favor of Kalke and the Medical Center for Women, ruling that (1) § 1–3–107 precluded appellants' suit to recover for acts or omissions which occurred prior to September 13, 1981, and (2) no question of material fact existed as to the conduct of Dr. Kalke.

Appellants ask this court to determine whether the trial court erred in its application of § 1–3–107 and whether appellee Kalke carried his burden of establishing the absence of any material facts necessitating trial. We will hold that appellants timely filed their actions against appellee Hussain within the two-and-one-half-year limitation period set out in § 1–3–107(a)(iv) for wrongdoing discovered during the second year following its occurrence. With respect to appellees Kalke and the Medical Center for Women, we will hold that appellants timely brought suit on September 13, 1983, to recover for conduct occurring prior to September 13, 1981, since the cessation of treatment on September 28, 1981 completed the act which started the running of the two-year statute of limitations. Section 1–3–107(a)(i). Finally, we will hold that appellees Kalke and the Medical Center for Women failed to support their motion for summary judgment with any evidence tending to refute the allegations of malpractice in the complaints and, therefore, the dis-

trict court erred in ruling that no issue of material fact existed for trial.

## THE STATUTE OF LIMITATIONS IN MEDICAL MALPRACTICE ACTIONS

Section 1–3–107(a) provides that medical malpractice actions must be initiated within two years of the wrongful act or omission, subject to specified exceptions:

"(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

"(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

"(A) Not reasonably discoverable within a two (2) year period; or

"(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence;

"(ii) For injury to the rights of a minor * * *;

"(iii) For injury to the rights of a plaintiff suffering from a legal disability other than minority * * *;

"(iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months."

In resolving the parties' conflicting interpretations of § 1–3–107(a), we must determine (1) the particular event in a continuing course of treatment which triggers the running of the statutory period under subsection (a)(i), and (2) with respect to the claims against Hussain, the extent of infor-

mation sufficient to constitute an injured party's discovery of the alleged act, error or omission under subsection (a)(iv). In undertaking this task, we are mindful that the statute of limitations represents legislative and public policy controlling the right to litigate and that we must give full force to the applicable statute without regard to the merits of a particular claim. *Olson v. A.H. Robins Company, Inc.*, Wyo., 696 P.2d 1294 (1985); *Duke v. Housen*, Wyo., 589 P.2d 334, *reh. denied*, 590 P.2d 1340, *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). We also note, however, that, where two constructions as to the limitation period are possible, the courts prefer the one which gives the longer period in which to prosecute the action. *Safeco Insurance Company of America v. Honeywell, Inc.*, Alaska, 639 P.2d 996 (1981); 3 Sutherland Statutory Construction § 70.03, p. 301 (4th Ed.1974). Statutes prescribing a relatively short period for suit are usually construed narrowly to give the holder of a cause of action a fair opportunity to present his claim. *Safeco Insurance Company of America v. Honeywell, Inc.*, supra. With these rules in mind, we turn to consideration of § 1–3–107(a), which addresses the permissible time frame for initiating malpractice actions.

*The Alleged Act, Error or Omission in a Continuing Course of Treatment*

Courts which have addressed the issue uniformly hold that where the defendant physician has provided a continuing course of care for the same or related complaints, the cessation of treatment completes the "act" which starts the running of the statutory period for filing suit. *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594, 3 A.L. R.4th 305 (1979); *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.*, 291 Minn. 145, 190 N.W.2d 77 (1971); *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962); *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941). The courts reason that the medical treatment and employment should be considered as a whole and if malpractice occurred during its course, the statute of limitations begins to run when

the treatment terminates. *Schmitt v. Esser*, 178 Minn. 82, 226 N.W. 196, 197 (1929). The Supreme Court of Nebraska set out the rationale for this "continuous treatment" rule in *Williams v. Elias*, supra, 1 N.W.2d at 124:

" * * * [I]n the treatment of a patient the diagnosis might change from time to time, and it is commonly accepted in the medical profession that the diagnosis, in the first instance, is not binding on the physician. He should have the right, during the course of treatment, to change the diagnosis. * * *

" * * * The diagnosis referred to was a continuing biweekly one, and each time an incorrect diagnosis was made and an incorrect treatment applied, plaintiff's injuries were extended. It was not the error in the diagnosis originally made by defendant but its adherence thereto and course of treatment that brought about the injuries."

 We hold with the foregoing authorities that the act, error or omission which starts the running of the statute of limitations against medical malpractice actions is the termination of the course of treatment for the same or related illnesses or injuries. Accordingly, the limitation period established by § 1–3–107(a) began to run with respect to appellants' claims against Dr. Kalke on September 28, 1981, the date he last treated Carolyn Metzger. Appellants timely filed their complaints against Kalke and the Medical Center for Women on September 13, 1983, within the two years allowed by subsection (a)(i).

With respect to appellants' actions against appellee Hussain, the limitation period began to run on May 12, 1981, the date on which appellee last examined and treated Carolyn Metzger. The question then becomes whether appellants had two and one-half years under subsection (a)(iv) within which to bring their actions against Hussain or only two years under subsection (a)(i).

*The Discovery of the Alleged Act, Error, or Omission under § 1–3–107(a)(iv)*

Appellants make no attempt to rely on the "discovery" exception incorporated in

subsection (a)(i)(A) and (B), since they contend that they actually discovered the alleged act or omission of appellee Hussain on July 15, 1982, within two years of its occurrence on May 12, 1981. Appellants take the position, however, that they are entitled to rely on the extended limitation period provided in subsection (a)(iv), since they actually discovered the alleged wrongdoing in the second year following its occurrence. Appellants assert that prior to July, 1982, they had no knowledge that appellees' failure to diagnose the pituitary tumor constituted malpractice, and, therefore, they cannot be charged with an earlier discovery of "the alleged act, error or omission." According to appellants, their discovery of the alleged conduct occurred on July 15, 1982, when Dr. Annin suggested that appellees' failure to diagnose Carolyn Metzger's pituitary tumor was wrongful.

Appellee Hussain contends that appellants discovered the alleged wrongful conduct on December 19, 1981, when Carolyn Metzger learned that she suffered from a pituitary tumor which had been growing for some time. At that point, according to appellee, Metzger knew of her affliction and knew that it had not been diagnosed by either Hussain or Kalke. Whether appellants knew that the physicians acted negligently makes no difference, appellee urges, in determining the date of appellants' discovery of the alleged act or omission for purposes of § 1–3–107(a)(iv). The appellee concludes that, since appellants discovered the missed diagnosis during the first year after its occurrence on May 12, 1981, they are bound by the two-year limitation period which expired prior to the initiation of these actions.

Section 1–3–107(a)(iv) allows an additional six months within which to file a malpractice action when the injured party discovers "the *alleged* act, error or omission" (emphasis added) during the second year of the two-year period from the date of such act. Therefore, appellants' suits initiated September 13, 1983, would be timely with respect to Hussain only if they discovered the alleged act after May 12, 1982.

In seeking to ascertain the legislative intent in enacting § 1–3–107(a)(iv), we begin by giving the words in the statute their plain, ordinary and usual meaning. *McCoy v. Thompson*, Wyo., 677 P.2d 839 (1984). Subsection (a)(iv) speaks of the time of discovery of the "alleged act, error or omission," which simply means the date on which the plaintiff first learns of the wrongdoing which forms the basis of his complaint. Whether the injured party should have learned or had reason to know of the wrongful act at an earlier date is irrelevant for purposes of this portion of the statute.

The alleged conduct in the case at bar is appellees' wrongful failure to diagnose Carolyn Metzger's pituitary tumor. In other words, to state a valid cause of action in their complaint appellants had to allege not only that the defendants missed diagnosing the tumor but also that the defendants should have diagnosed it given her symptoms and history. Thus, to come within the scope of subsection (a)(iv), appellants had to discover during the second year that the doctors' treatment of Carolyn Metzger was wrongful.

This conclusion that § 1–3–107(a)(iv) contemplates the discovery of all of the elements of one's cause of action is consistent with our previous applications of the discovery rule as a tool in determining when a particular statute of limitations attaches. In *Olson v. A.H. Robins Company, Inc.*, supra, 696 P.2d at 1297, we said:

> "Wyoming is a 'discovery' state; therefore, the statute of limitations is triggered when the plaintiff knows or has reason to know the existence of the cause of action. *Duke v. Housen*, supra; *Banner v. Town of Dayton*, Wyo., 474 P.2d 300 (1970). * * *"

In *Duke v. Housen*, supra, 589 P.2d at 341, we defined a cause of action as:

> "A 'cause of action' is the fact or combination of facts which give rise to a 'suit', the latter being a proceeding to enforce a right. * * *"

■ Other courts that have interpreted the statute of limitations in light of the discovery rule have said that the period of limitation begins to run in malpractice cases when the injured party discovers that the harm resulted from the defendant's wrongdoing. *Mastro v. Brodie*, Colo., 682 P.2d 1162 (1984); *Moore v. Jackson Park Hospital*, 95 Ill.2d 223, 69 Ill.Dec. 191, 447 N.E.2d 408 (1983); *Massey v. Litton*, 99 Nev. 723, 669 P.2d 248 (1983); *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 648 P.2d 689 (1982); *Renner v. Asli*, W.Va., 280 S.E.2d 240 (1981); *Foil v. Ballinger*, Utah, 601 P.2d 144 (1979); *Schalm v. Mount Clemens General Hospital*, 82 Mich.App. 669, 267 N.W.2d 479 (1978); *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 378 A.2d 1138 (1977); *Baines v. Blenderman*, Iowa, 223 N.W.2d 199 (1974); *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1969). The Supreme Court of Utah observed in *Foil v. Ballinger*, supra, 601 P.2d at 147, that the patient is seldom in a position to recognize substandard medical care at the time of its occurrence:

" * * * In the health care field it is typically the case that there often is a great disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. While the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time. Indeed, common experience teaches that one often suffers pain and other physical difficulties without knowing or suspecting the true cause, and may, as often happens, ascribe a totally erroneous cause to the manifestations. Even those who are trained in medical science often require the additional expertise of one possessing specialty training to diagnose properly the cause of certain ailments. A number of medical difficulties can readily be attributed by a layman to causes that are known or should be known. But when injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right."

In cases involving an undiagnosed affliction especially, the patient may not discover the wrong until so informed by another doctor:

"The question of malpractice in a diagnostic situation is often dependent upon when the plaintiff is informed by another physician that the original diagnosis was wrong and whether if a correct diagnosis had been made and treatment rendered the ultimate result would have changed. * * * " *Renner v. Asli*, supra, 280 S.E.2d at 242.

Moreover, the fact that plaintiff obtains a correct diagnosis does not necessarily constitute notice that the earlier, incorrect diagnosis was rendered negligently. *Schalm v. Mount Clemens General Hospital*, supra, 267 N.W.2d at 482.

■ In view of the specific language of § 1–3–107(a) and the rationale behind the discovery rule generally, we hold that a plaintiff discovers an "alleged act, error or omission" within the meaning of subsection (a)(iv) when he learns that his harm resulted from the wrongful conduct of the defendants. When such discovery occurs during the second year following the alleged wrongdoing, the limitation period for filing suit extends two and one-half years from the date of the alleged act.

In reaching this holding, we do not mean to imply that discovery of the alleged act under § 1–3–107(a)(iv) necessarily includes discovery of the legal theories which support a claim. We expressly rejected the notion in *Olson v. A.H. Robins Company, Inc.*, supra, 696 P.2d at 1299, that a plaintiff does not discover her cause of action until she discovers her legal rights. Sec-

tion 1–3–107(a)(iv) focuses on the *facts* which make up a cause of action rather than on the applicable legal theories. Accordingly, we find pertinent that said by the California Court of Appeals in *Graham v. Hansen*, 128 Cal.App.3d 965, 180 Cal. Rptr. 604, 609 (1982), in applying the discovery rule in a medical malpractice action:

"Plaintiff contends she did not realize she had a viable cause of action for medical malpractice until she contacted her attorney 24 months after the alleged malpractice and 18 months after she terminated the physician-patient relationship with defendants. This contention ignores the well-settled principle that ignorance of a legal theory of recovery against defendants is irrelevant. 'The statute of limitations is not tolled by belated discovery of *legal theories*, as distinguished from belated discovery of *facts*. * * *' (Emphasis in original; [citations].) If plaintiff believes because of injuries she has suffered that someone has done something wrong, such a fact is sufficient to alert a plaintiff 'to the necessity for investigation and pursuit of her remedies.' [Citations.]"

See also *Mastro v. Brodie*, supra, 682 P.2d at 1168; *Massey v. Litton*, supra, 669 P.2d at 252.

■ Appellee Hussain contends that even if § 1–3–107(a)(iv) contemplates discovery of a wrongdoing, appellants made such a discovery in December, 1981, as evidenced by Charles Metzger's consultation with an attorney. We would point out, however, that subsection (a)(iv) extends the limitation period based on the plaintiff's *actual* discovery of the alleged conduct. We are not concerned with what appellants in this case may have suspected or what they should have known in December, 1981. The affidavits submitted on behalf of appellants establish that they learned of appellees' alleged wrongdoing on July 15, 1982. Since appellants actually discovered the alleged act of appellee Hussain during

the second year after its occurrence, they were entitled to rely on the provisions of § 1–3–107(a)(iv) and brought their suits within the applicable limitation period.

## SUMMARY JUDGMENT IN MEDICAL MALPRACTICE ACTIONS

Appellees Dr. Kalke and the Medical Center for Women moved for summary judgment against the Metzgers on the ground

"[t]hat plaintiffs have failed to establish a prima facie case against these defendants. In support of the motion defendants request use of and will submit excerpts from the depositions of plaintiffs, defendant Hein Kalke, M.D.[1] and plaintiffs' experts."

At the hearing on their motion, appellees contended that they were entitled to summary judgment based on appellants' failure to produce any expert evidence in support of their claims of negligence filed against Dr. Kalke. The district court agreed and entered summary judgment on the ground that no dispute existed as to any material fact concerning the propriety of Kalke's care and treatment of Carolyn Metzger.

Appellants urge on appeal that the burden was on appellees, as the parties moving for summary judgment, to come forward with affidavits or other evidence which refuted the allegations of negligence in the complaints. Since appellees failed to make this initial showing, appellants deny any obligation on their part to produce expert testimony evaluating Kalke's conduct. Therefore, appellants conclude, the issue of Kalke's negligence remained for resolution at trial, and the district court erred in awarding summary judgment.

Appellees concede that the movant in summary-judgment proceedings bears the burden of showing an absence of genuine issues of material fact. Appellees submit, however, that they carried that burden by

---

**1.** The record contains a notice, filed by appellants, to take appellee Kalke's deposition. However, the record designated and filed on appeal does not contain Kalke's deposition, and the

questions of whether and to what extent that deposition affects the propriety of the summary judgment are not before us.

pointing to the record and the absence of any proof of Kalke's negligence in the depositions of appellants' experts. Appellees cite our opinion in *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981), for the proposition that the defendant physician in a medical malpractice case is presumed to have carefully and skillfully treated his patient and that, therefore, the plaintiff in such case must come forward with expert evidence in opposition to a motion for summary judgment. Appellees call our attention to the following language in *Harris v. Grizzle,* supra, 625 P.2d at 751:

"In order to defeat a motion for summary judgment in a medical malpractice action, a plaintiff:

" ' * * * has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered.' [Citation.]"

We cannot agree with appellees' interpretation of the manner in which a moving defendant properly satisfies his burden in summary judgment proceedings in a medical malpractice case.

Rule 56 of the Wyoming Rules of Civil Procedure permits a party to a civil action to move for summary judgment. Subsection (c) of the rule provides:

" * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law. * * * "

This court has consistently held that in a medical malpractice case, as in any other case, the burden of showing the absence of a genuine issue of material fact is upon the party moving for summary judgment. *Siebert v. Fowler,* Wyo., 637 P.2d 255 (1981); *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980); *DeHerrera v. Memorial Hospital of Carbon County,* Wyo., 590 P.2d 1342 (1979). The nonmoving plaintiff in a malpractice action has no obligation to support his pleadings with affidavits or other evidence until the defendant physician establishes that no factual issues exist for trial. *DeHerrera v. Memorial Hospital of Carbon County,* supra; Rule 56(e), W.R.C.P.[2]

Our holding in *DeHerrera v. Memorial Hospital of Carbon County* is particularly relevant to the discussion in the instant case, because the affidavits filed by both sides in that case were untimely and the defendant hospital and physician attempted to justify their summary judgment on the ground that the plaintiff had failed to produce proper evidence of malpractice. We reversed the summary judgment entered by the trial court and said:

"Appellees' reliance upon *Keller v. Anderson,* Wyo., 554 P.2d 1253 (1976) [3] for the proposition that the burden of proof or of going forward with reference to establishing issues of fact is initially upon the plaintiff in a malpractice suit is misplaced. The court there held that the plaintiff's affidavits were inadequate in addressing the ultimate facts of the case. The *Keller* case does not establish a dif-

**2.** Rule 56(e), W.R.C.P., provides in part:

" * * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him."

**3.** In *Keller v. Anderson,* Wyo., 554 P.2d 1253 (1976), the plaintiffs in a medical malpractice action attempted to rely on the doctrine of res

ipsa loquitur to defeat the defendant physicians' motions for summary judgment. The defendants had filed "factual and detailed" supporting affidavits to the effect that they had complied with the appropriate standards of care in the community. We observed that the doctrine of res ipsa loquitur was unavailable to a plaintiff in a medical malpractice case where the determination of alleged negligence was not within the common knowledge of man and held that the plaintiff had to counter the defendants' affidavits with expert evidence of the claimed negligence in order to withstand the motions for summary judgment.

ferent standard in the area of burden of proof or going forward for malpractice actions than otherwise exists. The general rule is as stated in *Mealey v. City of Laramie*, Wyo., 472 P.2d 787, 792 (1970):

" 'It must be remembered that the burden is on the movant to demonstrate clearly that there was no genuine issue of material fact and that movant is entitled to judgment as a matter of law, [citations]. This is so regardless of which party would have the burden of proof at the trial, [citations]. If, however, the movant has adequately supported the motion to the point of demonstrating that the issue tendered by the opposing party is frivolous or a sham, [citations] then "a burden," [citations] is cast upon the opposing party to come forward as required by Rule 56(e), W.R.C.P.' " 590 P.2d at 1345.

*Harris v. Grizzle*, upon which appellees rely, does not stand for a different rule. The moving physicians in that case filed supporting affidavits and did not rely solely on the absence of expert testimony by the plaintiff to justify summary judgment. We said:

"The motions for a summary judgment filed by the respective appellees [defendant physicians] were accompanied by affidavits adequate for summary judgment purposes. *When these motions were filed, appellant became obligated to offer competent evidence that would be admissible at trial showing that there were genuine issues of material fact.* Rule 56(e), W.R.C.P.; Wright & Miller, Federal Practice and Procedure: Civil § 2739; *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342 (1979); *Keller v. Anderson*, Wyo., 554 P.2d 1253 (1976); *Mealey v. City of Laramie*, Wyo., 472 P.2d 787 (1970); *Newton v. Misner*, Wyo., 423 P.2d 648 (1967). Appellant failed to meet this burden." (Emphasis added and footnote omitted.) 625 P.2d at 749–750.

We went on to set out the rather substantial burden imposed on the plaintiff as a result of the appropriate supporting affidavits filed by the moving doctors. We said that in such case the plaintiff had to establish the accepted standard of care, the defendant's departure from that standard, and legal causation. 625 P.2d at 751. In justifying our imposition of this burden, we observed that expert testimony is ordinarily required to establish negligence on the part of a physician in the care and treatment of his patients. We referred, in this connection, to the presumption of skillful treatment enjoyed by physicians at trial. 625 P.2d at 753. We did not intend to imply that a physician could rely on such presumption in support of a motion for summary judgment. Such a reading of *Harris v. Grizzle* would be inconsistent with our observation in *DeHerrera v. Memorial Hospital of Carbon County*, supra, 590 P.2d at 1345, that courts proceed with caution in awarding summary judgments in malpractice actions:

"As said in *Holl v. Talcott*, Fla., 191 So.2d 40, 46 (1966):

" ' * * * [S]ummary judgment procedures should be applied with special caution in negligence actions. [Citations]. This is particularly true in malpractice suits where, as here, the attending facts are peculiarly within the knowledge of the movants and the showing of negligence is generally dependent upon expert testimony as to the standard of care required and observed.' "

In reviewing the propriety of summary judgments entered in medical malpractice cases in other jurisdictions, the courts have held that the nonmoving plaintiff has no obligation to present expert testimony at the pretrial stage, unless the movant establishes that no material questions of fact exist with respect to the allegations in the complaint. *Felske v. Worland*, 63 Or.App. 442, 664 P.2d 427 (1983); *Smith v. Hoffman*, Colo.App., 656 P.2d 1327 (1982); *Holl v. Talcott*, Fla., 191 So.2d 40 (1966). In *Felske v. Worland*, the defendant physician filed a motion for summary judgment supported by his deposition and portions of the plaintiff's deposition. The plaintiff

submitted no expert testimony in opposition, and the trial court granted summary judgment. The Oregon Court of Appeals reversed, saying:

> "The burden is on the party moving for summary judgment to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. [Citations.] Defendant did not sustain that burden. In his deposition, defendant did not testify that his acts were consistent with the degree of care, skill and diligence which is used by ordinarily careful physicians in the same or similar circumstances in his or a similar community. [Citations.] The court should not have found that there was no issue of material fact as to defendant's negligence." (Footnotes omitted.) 664 P.2d at 428–429.

In *Smith v. Hoffman,* the defendant's affidavit in support of summary judgment gave the reasons why he had performed dental surgery but did not contradict the negligence claims asserted in the complaint. The plaintiff, in response, filed an expert's report which made no reference to any negligence by the defendant. The trial court reasoned that expert testimony was required to substantiate the plaintiff's negligence claims and granted the defendant's motion for summary judgment. In reversing the judgment, the Colorado Court of Appeals noted that plaintiff's expert might testify favorably at trial, and, furthermore, the defendant himself could be called as an adverse witness to present expert testimony. The appellate court concluded

> " * * * that in the circumstances here presented, plaintiff's failure, prior to trial, to produce a statement from an expert witness asserting that defendant's conduct was negligent is not sufficient to

permit the dismissal of his complaint. Disputed material facts disclosed by the pleadings remain unresolved and must, therefore, await resolution by the appropriate finder of fact." 656 P.2d at 1329.

■ The record on appeal in the case at bar contains no affidavits, depositions or other evidence purporting to refute the claims of negligence asserted by the Metzgers in their complaints. Appellees Dr. Kalke and the Medical Center for Women, as the parties moving for summary judgment, bore the burden of establishing that no genuine issues of material fact existed for resolution at trial. Absent a showing of specific facts probative of appellees' right to judgment, appellants had no obligation to support their complaint with expert testimony. The pleadings of the parties structure a question of fact as to appellees' negligence and summary judgment was improper.

Reversed and remanded for further proceedings consistent with this opinion.

ROONEY, J., concurs in part and dissents in part.

ROONEY, Justice, concurring in part and dissenting in part.

I concur with that part of the majority opinion reversing the summary judgment for appellee Kalke, but I dissent from that part of it reversing the summary judgment for appellees Hussain and the Medical Center for Women. I believe the trial court properly held that the action against appellees Hussain and the Medical Center for Women was barred by the statute of limitations.

The trial court did not err in applying the statute of limitations set out in § 1–3–107(a), W.S.1977,[1] if appellants "discover-

---

1. Section 1–3–107(a), W.S.1977, provides in pertinent part:

 "(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

 "(i) Within two (2) years of the date of the alleged act, error or omission, except that a

cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

 "(A) Not reasonably discoverable within a two (2) year period; or

 "(B) The claimant failed to discover the alleged act, error or omission within the two (2)

ed" the fact that appellees had failed to diagnose and properly treat appellant Carolyn Metzger's tumor [the "alleged act, error or omission" from which a cause of action arose] prior to May 12, 1982, one year after the last day of treatment by appellees.

The majority opinion places the *fact* of discovery on July 15, 1982, when appellant Carolyn Metzger's treating physician in Lincoln, Nebraska, suggested to appellants' attorney that appellees' treatment had been wrongful. The attorney had been contacted by appellants in December 1981 with the request that he investigate the bases for legal action against appellees.

The majority opinion does not question the propriety of the summary judgment on the ground that there is a question of fact as to the date of "discovery," but it decides that the "discovery" is at the time when it is learned that the treatment "was wrongful." I agree that there is no issue of fact to prevent a summary judgment. The factual situation is not controverted. The problem is only from the application of the facts to the requirements of the statute.

To me the answer is simple. When the attorney was consulted in December 1981, appellants had reason to know the existence of the cause of action and the two-year statute of limitations applied without any extension due to "discovery" after the first year. The quotation in the majority opinion from *Olson v. A.H. Robins Company, Inc.*, Wyo., 696 P.2d 1294, 1297 (1985) is pertinent:

" 'Wyoming is a "discovery" state; therefore, the statute of limitations is triggered when the plaintiff knows *or has reason to know* the existence of the cause of action. *Duke v. Housen*, supra [589 P.2d 334 (1979) ]; *Banner v. Town*

*of Dayton*, Wyo., 474 P.2d 300 (1970). * * * ' " (Emphasis added.)

Inconsistent with its holding, the majority opinion said that:

"In reaching this holding, we do not mean to imply that discovery of the alleged act under § 1–3–107(a)(iv) necessarily includes discovery of the legal theories which support a claim. We expressly rejected the notion in *Olson v. A.H. Robins Company, Inc.*, 696 P.2d at 1299, that a plaintiff does not discover her cause of action until she discovers her legal rights. * * * "

Appellants contacted the attorney to ascertain their legal rights. They believed at that time that someone had done something wrong.[2] They had reason to know of the existence of a cause of action. Why else see an attorney? Again, as quoted in the majority opinion from *Graham v. Hansen*, 128 Cal.App.3d 965, 180 Cal.Rptr. 604, 609 (1982):

" ' * * * If plaintiff believes because of injuries she has suffered that someone has done something wrong, such a fact is sufficient to alert a plaintiff "to the necessity for investigation and pursuit of her remedies." [Citations.]' "

It is beyond the legislative intent to allow an attorney to obtain a six-month extension of the statute of limitations by delaying his investigation into the matter until a year after the alleged act by means of failing to obtain a statement during the first year after the alleged act from the treating physician to the effect that other physicians had failed to make a proper diagnosis. It was not the intent to place such control in the attorney.

I do not disagree with the proposition supported by the cases cited in the majority opinion that the statute of limitations begins to run in malpractice cases, in light of

---

year period despite the exercise of due diligence;

\* \* \* \* \* \*

"(iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act,

error or omission, the period for commencing a lawsuit shall be extended by six (6) months."

**2.** The actual determination as to whether or not the act, error or omission was wrongful would not occur until the jury returned its verdict. The very purpose of the lawsuit is to make that determination.

the discovery rule, when the injured party discovers that the harm resulted from defendant's wrongdoing. The scenario of this case is that such discovery occurred in December of 1981 when surgery was performed on appellant Carolyn Metzger and appellant Charles Metzger engaged the services of an attorney in connection with legal action against appellees.

I would affirm the summary judgment for appellees Hussain and the Medical Center for Women and reverse the summary judgment for Kalke.