2005 WY 59

**Jean Leon JAUREGUI and Josephine C. Jauregui, Appellants (Plaintiffs),**

v.

**MEMORIAL HOSPITAL OF SWEETWA-TER COUNTY; and Joseph J. Oliver, M.D., Appellees (Defendants).**

No. 04–64.

Supreme Court of Wyoming.

May 13, 2005.

Rehearing Denied June 8, 2005.

Representing Appellant: Jeremy D. Michaels of Michaels and Michaels, Gillette, Wyoming; Philip White, Jr., Laramie, Wyoming. Argument by Mr. Michaels.

Representing Appellee Memorial Hospital of Sweetwater County: George E. Powers, Jr., and Isaac N. Sutphin of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming. Argument by Mr. Powers.

Representing Appellee Joseph J. Oliver, M.D.: W. Henry Combs, III, and Kathleen J. Swanson of Murane & Bostwick, LLC, Casper, Wyoming. Argument by Ms. Swanson.

Before HILL, C.J., and GOLDEN and VOIGT, JJ., and PERRY and BURKE, DJJ.

GOLDEN, Justice.

[¶ 1] Appellants Jean Leon and Josephine Jauregui brought a medical malpractice action against Memorial Hospital of Sweetwater County (the Hospital) and Dr. Joseph Oliver. The district court dismissed the action as to the Hospital, holding that the action was barred as to the Hospital because the Jaureguis had not filed a governmental claim within the time frame established by Wyo. Stat. Ann. § 1–39–113 (LexisNexis 2003). The district court granted summary judgment in favor of Dr. Oliver because the Jaureguis had not filed their complaint within the time mandated by the malpractice statute of limitations, Wyo. Stat. Ann. § 1–3–107 (LexisNexis 2003). We affirm the dismissal of the claim against the hospital but reverse the grant of summary judgment in favor of Dr. Oliver and remand.

## ISSUES

[¶ 2] The Jaureguis present the following three issues for this Court's review:

1. As to both the Hospital and Dr. Oliver, did the continuing treatment rule and/or the continuing tort rule toll the running of the malpractice statute of limitation and the notice of claim statute at least until the date of the second surgery on February 26, 1999, only a month and a half after the initial surgery?

2. As to both the Hospital and Dr. Oliver, did the district court commit an error of law in its interpretation of the discovery exception [to] the applicable statutes?

3. If the district court's interpretation of the discovery exception in the applicable statutes of limitation was correct, do those statutes violate the equal protection provisions (Art. I, §§ 2 and 3), the due process provision (Art. I, § 6), the open courts provision (Art. I, § 8), the uniform operation of laws provision (Art. I, § 34) and/or other provisions of the Wyoming Constitution?

Both Dr. Oliver and the Hospital generally join these issues, although both question whether the constitutional challenges presented by the Jaureguis in their third issue are properly before this Court.

## FACTS

[¶ 3] The pertinent allegations in the Jaureguis' complaint are that Dr. Oliver operated on Mr. Jauregui at the Hospital, and was assisted by Hospital staff, to repair a torn rotator cuff tendon on January 11, 1999. A week later Mr. Jauregui returned to Dr. Oliver to have the stitches removed. At that time, an infection was present. On February 26, 1999, Dr. Oliver again operated on Mr. Jauregui's shoulder at the Hospital.[1] During this operation, a surgical sponge was found that had been left inside Mr. Jauregui's shoulder during the first operation. Deposition testimony revealed that the Jaureguis were informed of the presence of the surgical sponge immediately following the February surgery. The Jaureguis contended that all parties were negligent in leaving the sponge in Mr. Jauregui's shoulder. The Jaureguis filed both a governmental claim form with

---

1. The Complaint incorrectly states that the February surgery occurred on February 27, 1999. All parties agree that the second surgery oc-

curred on February 26, 1999. The variance is irrelevant to the issues raised.

the Hospital and their complaint in district court on February 26, 2001.

## STANDARD OF REVIEW

■ [¶ 4] The district court dismissed the cause of action against the Hospital finding that it lacked subject matter jurisdiction. This Court reviews issues concerning subject matter jurisdiction de novo. *Nyberg v. State Military Dept.*, 2003 WY 43, ¶ 8, 65 P.3d 1241, ¶ 8 (Wyo.2003) ("We review jurisdictional questions de novo pursuant to our power and duty to address jurisdictional defects.").

■ [¶ 5] The district court granted summary judgment in favor of Dr. Oliver. The scope of our review of the granting of a motion for summary judgment is plenary. "In reviewing summary judgment orders, we have the same duty, review the same materials, and follow the same standards as the district court." *Merrill v. Jansma*, 2004 WY 26, ¶ 6, 86 P.3d 270, ¶ 6 (Wyo.2004). In this appeal, no factual issues are contested. This Court reviews issues of law de novo, according no deference to the district court's decision on issues of law. *Id.* at ¶ 7.

## DISCUSSION

*The Hospital*

■ [¶ 6] Because the Hospital qualifies as a governmental entity, any action against it must comply with the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–121 (LexisNexis 2003), as well as requirements of the Wyoming Constitution. The argument of the parties, and the decision by the district court dismissing the complaint, revolve solely around whether the notice of claim was brought within the time frame of § 1–39–113. However, this Court can affirm on any lawful reason reflected in the record. *Pasenelli v. Pasenelli*, 2002 WY 159, ¶ 16, 57 P.3d 324, ¶ 16 (Wyo.2002) ("This Court may affirm a judgment or order on any legal ground appearing in the record."). We therefore choose not to discuss the time frame set by the claims procedure but rather affirm the dismissal for a much more simple reason. The notice of claim submitted to the Hospital

and attached to the complaint of the Jaureguis, while signed by the Jaureguis, is not certified to under penalty of perjury as required by the Wyoming Constitution.

■ [¶ 7] Article 16, § 7 of the Wyoming Constitution commands:

No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political subdivision, shall be audited, allowed or paid until a full itemized statement in writing, *certified to under penalty of perjury,* shall be filed with the officer or officers whose duty it may be to audit the same.

(Emphasis added). Failure to adhere to the constitutional requirement that the notice of claim be certified to under penalty of perjury prevents the district court from acquiring subject matter jurisdiction over the claim. *Yoak v. Ide*, 2004 WY 32, ¶ 8, 86 P.3d 872, ¶ 8 (Wyo.2004) ("We have affirmed dismissal of the appellant's complaint because her underlying governmental claim did not meet the constitutional signature and certification requirements."); *Beaulieu v. Florquist*, 2004 WY 31, ¶ 15, 86 P.3d 863, ¶ 15 (Wyo.2004) ("The courts do not have subject matter jurisdiction over a governmental claim that has not met the ... constitutional signature and certification requirements."). For the foregoing reason, we affirm the dismissal of the complaint against the Hospital.

*Dr. Oliver*

■ [¶ 8] The time for bringing a legal action against Dr. Oliver is governed by the malpractice statute of limitation, § 1–3–107, which in pertinent part reads:

**Act, error or omission in rendering professional or health care services.**

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not

more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

    (A) Not reasonably discoverable within a two (2) year period; or

    (B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

\* \* \* \*

    (iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

In applying this statute, the district court determined that any potential negligent "act, error or omission" occurred during the January 11, 1999, surgery, and therefore the action should have been filed no later than January 11, 2001. The Jaureguis argue that the time for filing the action should run from the date the alleged negligence was discovered, which was when the sponge was discovered and removed on February 26, 1999.

[¶ 9] While the district court engaged in statutory interpretation in reaching its decision, we find it unnecessary to engage in such an exercise. Prior precedent from this Court is directly applicable and determinative of the outcome of this appeal. This Court has held on many occasions that § 1–3–107 is a discovery statute. Almost twenty years ago, this Court, in *Metzger v. Kalke,* 709 P.2d 414 (Wyo.1985), in construing § 1–3–107, defined the "act, error or omission which starts the running of the statute of limitations against malpractice actions" as "the termination of the course of treatment for the same or related illnesses or injuries." *Id.* at 417. This is commonly referred to as the "continuous treatment" doctrine. The legislature has not changed the statute since *Metzger* was decided. The continuous treatment doctrine remains applicable in Wyoming.

[¶ 10] The continuous treatment doctrine is founded upon sound policy. The nature of the physician-patient relationship requires the patient to rely on the knowledge and skill of the doctor. At the stage where the physician is providing a diagnosis and advice for the patient's medical care, the patient cannot be expected to know that the doctor's actions might be negligent and result in harm or to question them. The continuous treatment doctrine directly applies to the instant case. Dr. Oliver's treatment to repair Mr. Jauregui's torn rotator cuff tendon did not end with the first surgery. Dr. Oliver continued to treat Mr. Jauregui specifically with regard to his rotator cuff tendon surgery. Dr. Oliver treated the immediately ensuing infection, and Dr. Oliver performed the second surgery wherein the surgical sponge was removed. Each treatment up to the second surgery on February 26 was directly connected to the initial surgery. Thus, the act constituting the final act in the course of treatment for the surgical repair of Mr. Jauregui's torn rotator cuff was the second surgery. The statute of limitation thus began to run as of the date of the second surgery. The underlying malpractice action, brought within two years of that date, is not time barred.

■ [¶ 11] Dr. Oliver argues that the "single-act" exception to the continuous treatment doctrine applies to the facts of this case. Dr. Oliver argues that the continuous treatment doctrine applies only when there is no single identifiable act of malpractice from which the statute of limitation can be said to run. Dr. Oliver contends that, in the instant case, any alleged malpractice was a single act that, if it occurred at all, occurred during the January 11, 1999, surgery. Thus, according to Dr. Oliver, the continuous treatment doctrine does not apply and the statute of limitation began to run on January 11, 1999.

■ [¶ 12] While it is true that the continuous treatment doctrine applies to cases involving a continuous course of treatment where no single act can be pointed to as the act of malpractice, *see Sharsmith v. Hill,* 764 P.2d 667 (Wyo.1988) (negligent misdiagnosis); *Metzger v. Kalke,* 709 P.2d 414 (Wyo. 1985) (negligent misdiagnosis), the doctrine is not so strictly limited. Minnesota courts

have offered a very complete definition of the "single-act" exception:

> At the time Doyle filed her May 6, 1999, claim, the medical malpractice statute of limitations required that claims be commenced within two years of the accrual of the cause of action. *See* Minn.Stat. § 541.07(1) (1998). Generally, the "cause of action accrues when the physician's treatment for a particular condition ceases." *Grondahl v. Bulluck,* 318 N.W.2d 240, 243 (Minn.1982) (citation omitted). This is the general termination of treatment rule.
>
> But where there is a single act of allegedly negligent conduct, the statute of limitations begins to run at the time the plaintiff sustains damage from the act. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 428–29 (Minn.1988). More precisely, the cause of action begins to run at the time of the negligent act (and not at the end of the course of treatment) when the alleged tort consists of (1) a single act; (2) which is complete at a precise time; (3) which no continued course of treatment can either cure or relieve; and (4) where the plaintiff is actually aware of the facts upon which the claim is based; that is, the plaintiff is aware of the malpractice prior to the end of treatment. *Swang v. Hauser,* 288 Minn. 306, 309, 180 N.W.2d 187, 189–90 (1970). We refer to this rule as the "single-act" exception.

*Doyle v. Kuch,* 611 N.W.2d 28, 31 (Minn.App. 2000).

[¶ 13] While the underlying facts of the instant case support a finding of the first two factors, it is factors three and four that are not supported. Dr. Oliver's continued treatment did in fact relieve the problem created by the alleged malpractice, and neither the Jaureguis nor Dr. Oliver knew of the alleged act of malpractice prior to the date Dr. Oliver completed his surgical treatment of Mr. Jauregui. The single-act exception does not apply to these facts.

[¶ 14] Even if this Court were to determine that a single act of negligence occurred, the definition of a single act of negligence is not limited to the initial January 11, 1999, surgery. The term "single-act" is mislead-

ing. In *Haberle v. Buchwald,* 480 N.W.2d 351 (Minn.App.1992), Dr. Buchwald performed gastric bypass surgery on Haberle on January 13, 1986. Severe complications arose, and two emergency surgeries were conducted within days of the initial surgery, the first on January 17 and the second on January 21. During the January 21 surgery, necrotic tissue was discovered, and the surgeon had no choice but to remove 80% of appellant's stomach. The surgeon also had to disconnect appellant's esophagus from her bowel, place a tube in her neck to drain her esophagus, and place a feeding tube in her abdomen. Haberle continued treatment with Dr. Buchwald with regard to the gastric bypass surgery and the ensuing complications. *Id.* at 353–54.

[¶ 15] In 1989, Haberle sued Dr. Buchwald. Haberle asserted the continuous treatment doctrine tolled the two-year statute of limitations. The Minnesota court applied the four factors of the single-act exception to the facts of Haberle's malpractice claim and determined that the single-act exception applied:

> Following the January 21 surgery, appellant either knew or should have known that there had been substantial and unforeseen complications. She had lost 80% of her stomach, and was being fed through a tube in her abdomen. From a common sense viewpoint, it is clear appellant knew or should have known the facts upon which her claim could be based as of January 21, 1986. Accrual of a cause of action need not wait until a plaintiff in fact has sought an expert opinion stating there was a departure from accepted medical practice. Acceptance of such a position would emasculate the single act exception.
>
> In conclusion, we note that the phrase "a single act of malpractice" is a misleading title for the legal concept it identifies. The rule applies, not to conduct that starts and ends in a moment, but rather to a course of malpractice which terminates at a specific point in time. In this instance, the alleged malpractice clearly ended on January 17, with the emergency exploratory operation. All subsequent treatment was independent of the alleged malpractice and

in no way negligent. Following the January 21 surgery, appellant's injuries were obvious, and the facts upon which her claims are based were readily obtainable and discoverable at that point.

A literal interpretation of the "single act" requirement would mean the statute of limitations would never run for a physician who continued to provide treatment. A rule of law that would force a doctor to terminate treatment in order to have the benefit of the statute of limitations would be unfair, protecting all doctors except those who continue to provide care. It is unfortunate that this exception acquired the name "single act" when what was intended is quite a different matter, termination of the episode of malpractice at an identifiable point in time.

*Id.* at 356–57. Thus, the "single act" was actually a course of treatment culminating with obvious damages at a time certain. Applying this analysis to Mr. Jauregui's situation, the "single act" was the course of treatment terminating in the second surgery on February 26, 1999. Again, the underlying action, filed by the Jauregui's on February 26, 2001, is timely.

## CONCLUSION

[¶ 16] The Jaureguis failed to file a notice of claim against the Hospital that was sworn to under penalty of perjury as required by the Wyoming Constitution. This failure deprived the district court of jurisdiction over the potential claim. The cause of action against the Hospital was correctly dismissed.

[¶ 17] The district court erred, however, in granting summary judgment in favor of Dr. Oliver. The finding by the district court that the "act, error or omission" that triggers the running of the statute of limitation under § 1–3–107 was the first surgery when the sponge was left in Mr. Jauregui's shoulder ignores almost twenty years of precedent of this Court. This Court has clearly defined the "act, error or omission" under § 1–3–107 as being "the termination of the course of treatment for the same or related illnesses or injuries." In this case, the February 26,

1999, surgery was a direct continuation of the course of treatment begun by the initial January surgery. The Jaureguis' action, brought on February 26, 2001, is timely.

[¶ 18] Affirmed in part and reversed in part. This case is remanded to the district court for further proceedings consistent with this opinion.

BURKE, District Judge, specially concurring.

[¶ 19] I agree with the result reached by the majority. I write separately because I disagree with the rationale provided by the majority for dismissal of the Jaureguis' claim against the Hospital.

[¶ 20] The majority dismisses the claim against the Hospital for failure to comply with the certification requirements of Article 16, § 7 of the Wyoming Constitution. This defense was not asserted by the Hospital. Such defense was waived. See my dissent in *Wooster v. Carbon Co. School Dist. No. 1,* 2005 WY 47, 109 P.3d 893 (Wyo.2005).

[¶ 21] I would affirm dismissal of the Jaureguis' claim against the Hospital because it was untimely. It is undisputed that the Jaureguis' claim was not filed within two years of the original surgery performed at the Hospital on January 11, 1999. The Jaureguis did not file their Notice of Claim against the Hospital until February 26, 2001. The complaint does not allege facts which, if interpreted in the light most favorable to the Jaureguis, would warrant application of the continuous treatment doctrine to the claim against the Hospital. The Jaureguis' claim against the Hospital is barred by their failure to comply with the two year time limitation for filing a claim as required by Wyo. Stat. Ann. § 1–39–113.