J-A21035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GREGORY BURNS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAITLYN FAHRNER | : | No. 733 EDA 2022 |

Appeal from the Order Entered February 17, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-18123

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED SEPTEMBER 30, 2022**

Gregory Burns (Appellant) appeals from the order entered in the Montgomery County Court of Common Pleas dismissing his defamation action against Kaitlyn Fahrner (Appellee) pursuant to the doctrine of *forum non conveniens*, without prejudice to him to refile the action in the state of Nevada. On appeal, Appellant contends the trial court erred when it dismissed his complaint because the court misstated certain evidence and ignored relevant evidence, made unwarranted factual and legal presumptions, and failed to follow procedural rules. Additionally, Appellee requests that we award her attorney fees pursuant to Pa.R.A.P. 2744. For the reasons below, we affirm the order on appeal, and deny Appellee's request for attorney fees.

## I.     Facts & Procedural History

The trial court aptly summarized the relevant facts and procedural history as follows:

On or about September 21, 2019, the parties met at the Omnia nightclub in Caesars Palace, Las Vegas, Nevada. Appellee left the nightclub with Appellant, and spent the night at his condominium at the Panorama Towers in Las Vegas, Nevada. On September 25, 2019, Appellee underwent a sexual assault examination at the Emergency Department at the University Medical Center in Nevada. On September 27, 2019, Appellee filed a police report and gave a statement to the Las Vegas Metropolitan Police Department ("LVMPD") alleging Appellant sexually assaulted her on September 22, 2019.

On or about June 8, 2021, Appellant received a demand from Appellee to pay her a monetary sum of money based on her allegation that he placed a date rape drug in her drink. In August of 2021, the parties attended an unsuccessful voluntary mediation session with [a] retired federal judge . . . at the Las Vegas Office of Judicial Arbitration and Mediation Services, Inc. ("JAMS") in Nevada. On August 26, 2021, Appellant advised Appellee that any destruction of evidence or disposal of documents could subject her to criminal penalties for spoliation of evidence pursuant to Nevada Revised Statute 199.220.

On September 1, 2021, Appellee filed a Civil Complaint in the District Court of Clark County, Nevada against Appellant seeking damages for Sexual Battery and Intentional Infliction of Emotional Distress. [Appellee identified herself in the complaint as "Jane Doe" and averred that Appellant "knows the name and identity of Plaintiff."[1]] On September 3, 2021, Appellee filed an Amended Civil Complaint alleging Battery, Negligence, and Negligent/Intentional Infliction of Emotional Distress. The pending Nevada lawsuit alleges that Appellant had sexual intercourse with her on September 22, 2019[,] at a time when she was incapable of consent. Appellee alleged that she was [24] years old at the time she met Appellant who was over [50] years old. Appellee alleges that Appellant mixed an alcoholic drink for her. She has no memory after the alcohol drink was mixed, until waking up in Appellant[']s condominium wearing only her bra and feeling really out of it. Appellee alleges that Appellant does not

---

[1] Appellee's Petition to Dismiss Appellant's Complaint (Without Prejudice) Based Upon the Doctrine of *Forum Non Conveniens* (Appellee's Petition to Dismiss), 10/19/21, at Exhibit C, ***Jane Doe v. Burns***, Case No. A-21-840435-C, Dept. 5, Amended Complaint, 9/3/21 (Amended Nevada Complaint), at ¶ 6.

dispute that he engaged in sexual intercourse with Appellee. Appellee's lawsuit is based upon her claim that he had sexual intercourse with her while she was passed-out, unconscious and/or otherwise incapable of consenting to sexual intercourse with him. Appellee called the Rape Crisis Hotline and confided with her close friend and sister about her belief that she had been sexually assaulted. She also asked "T.J." who also lived at Panorama Towers in Las Vegas, Nevada if video surveillance footage of the early morning hours on September 22, 2019[,] could be obtained.

One day after Appellee filed the civil action in Nevada, on September 2, 2021, Appellant[ ] filed a Praecipe for Summons in [the Pennsylvania Montgomery County Court of Common Pleas] alleging a Slander/Libel/Defamation action. On September 9, 2021, Appellant filed the Complaint against Appellee alleging Defamation based upon a false allegation that he placed a date rape drug in her drink at a nightclub years before. Appellant alleges that he learned on August 18, 2021, that Appellee published this alleged false statement years before, and the following individuals heard this information: (1) Thasin Jaigirdar [also known as T.J.], (2) Adrian Arellano, (3) Jen Hahn, (4) Arthur Chung, (5) Appellee's sister Jonalee Shappley, (6) Appellee's friend Danielle Snajder, and (7) Appellee's former co-worker Claudia.[2] . . .

Trial Ct. Op., 3/31/22, at 1-3 (record citations omitted). Appellant's complaint listed his residence as Las Vegas, Nevada, and Appellee's residence as Hatfield, Montgomery County, Pennsylvania.[3]

On October 19, 2021, Appellee filed a petition to dismiss the complaint based upon the doctrine of *forum non conveniens*. **See** Appellee's Petition to Dismiss. Appellee averred that while she is temporarily residing in

_____

[2] Claudia's last name is not included in the record.

[3] It is undisputed that both parties were living in Nevada at the time of their encounter in September of 2019. **See** Trial Ct. Op. at 3.

Montgomery County, Pennsylvania, she "maintains a current Nevada Driver's License[,] considers Nevada her permanent home/domicile[,] and intends to return there[.]"[4]  *Id.* at 1-2.  Moreover, Appellee stated that the parties "are litigants" in a pending civil action she filed earlier in Nevada, and that both suits are "related to, and arising from, the same set of operative facts, transactions, and occurrences[;] namely their encounter with each other on September 22, 2019 at a nightclub in Las Vegas, Nevada."  *Id.* at 2 (emphasis omitted).  She averred that, in August of 2021, she and Appellant "participated in a voluntary mediation" in Nevada concerning her lawsuit.  *Id.*  Appellee further insisted Appellant filed this "retaliatory lawsuit" against her in Pennsylvania — which stripped her of her "Jane Doe" status in the Nevada action — in an attempt to find a "more favorable jurisdiction in which to attack his victim."[5]  *Id.* at 3-4 (emphasis omitted).  In asserting that Pennsylvania

_____

[4] In an attached affidavit, Appellee explained that she began a nursing program in Montgomery County, Pennsylvania, in May of 2020.  Appellee's Petition to Dismiss, Exhibit A, Affidavit of Kaitlyn M. Fahrner, 10/15/21, at 1. After she graduated in May of 2021, she began a six-month internship at a hospital in Quakertown, Pennsylvania, which she was due to complete in February of 2022.  *Id.*  She further averred that if she successfully completes her internship, she will have "a two-year 'on-the-job training work commitment' with" that hospital.  *Id.*  Appellee stated she intends to return to Nevada either after her internship, should she not successfully complete it, or after her two-year training.  *Id.*

[5] Indeed, Appellee asserts her statement that Appellant drugged and assaulted her, made during a police investigation, may be "privileged and subject to protection under [Nevada's] 'anti-SLAPP' law codified at Nevada Revised Statute 41.637."  Appellee's Petition to Dismiss at 3.  Nevada's Anti-SLAPP law provides that "[a] person who engages in a good faith
*(Footnote Continued Next Page)*

- 4 -

is an inconvenient forum for the defamation lawsuit, Appellee emphasized the following: (1) "[t]he primary events giving rise to both [the] Nevada and Pennsylvania Cases occurred in . . . Nevada[;]" (2) six of the witnesses Appellant listed in his lawsuit live in Nevada, and the seventh lives in Connecticut; (3) Appellee filed a police report in Las Vegas, Nevada; and (4) Pennsylvania has "no legitimate interest in this lawsuit . . . involving Nevada facts." *Id.* at 6-7.

On November 15, 2021, Appellant filed an answer and accompanying brief in response to Appellee's petition. Appellant asserted: (1) he is now domiciled in Tennessee, and has not been served with Appellee's Nevada lawsuit; (2) "one of the key individuals identified in the Complaint — Mr. Thasin Jaigirdar — lives in Philadelphia[, as do Appellee] and another witness[;]" (3) Appellee failed to identify an alternative forum for the defamation action; (4) to the extent she implies Nevada is an available forum, Appellee "failed to state that she will waive any . . . defenses" that may foreclose review; (5) because Appellee acknowledges she has been living in Pennsylvania since May 2020, "it is reasonable to conclude that" she made defamatory statements in Pennsylvania; (6) his lawsuit is based on her

---

communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev.Rev.Stat. § 41.650. Section 41.637 defines a "good faith communication" as, *inter alia*, any "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." Nev.Rev.Stat. § 41.637(4).

"**statements** to other individuals — not the encounter in a Las Vegas nightclub[;]" and (7) to the extent Appellant can show Appellee made defamatory statements while in Pennsylvania, "it cannot be said that Pennsylvania has no relation to this matter." Appellant's Brief in Support of Answer in Opposition to Appellee's Petition to Dismiss the Complaint Based Upon *Forum Non Conveniens*, 11/15/21, at 6-11. Alternatively, if the court did not deny Appellee's petition "outright," Appellant requested "sufficient time to seek discovery" concerning the alleged defamatory statements. *See id.* at 11-12.

Just over a month later, on December 17, 2021, Appellant filed a supplemental answer to Appellee's petition, in which he claimed Appellee's "recently answered delinquent discovery requests" undermined the claims in her petition to dismiss. Appellant's Supplemental Answer in Opposition to Appellee's Petition to Dismiss Appellant's Complaint Based Upon the Doctrine of *Forum Non Conveniens* (Appellant's Supplemental Answer), 12/17/21, at 1-2. Appellant averred that Appellee admitted she made the "alleged defamatory statements to three different Pennsylvania residents." *Id.* at 2. Accordingly, he argued, the Montgomery County Court of Common Pleas "is the only court that should address [his] Pennsylvania law[-]based claims concerning defamatory statements in Pennsylvania made by a defendant who intends to remain a resident of Pennsylvania until at least February 2024." *Id.* at 3.

Three days later, Appellant filed another motion, this one seeking a court order to compel Appellee to respond to his First Set of Requests for Production, which he had served on September 22nd. On January 7, 2022, Appellee filed both an answer in opposition to Appellant's motion to compel, and a motion for a protective order requesting the court stay all discovery until her preliminary objections[6] and petition to dismiss were decided. **See** Appellee's Motion for Protective Order Staying All Discovery until Appellee's Preliminary Objections & Petition to Dismiss are Decided (Appellee's Motion for Protective Order), 1/7/22. The trial court granted the motion for protective order on February 8th, and stayed all discovery until it ruled on Appellee's preliminary objections and petition to dismiss. It also scheduled argument on Appellant's petition to dismiss for February 17th. **See** Orders, 2/8/22.

During the February 17th argument, Appellant's counsel explained that while "Nevada, obviously, has some connection [to the matter] in the sense that the events that underlie these issues occurred in Nevada[,] the crux of [Appellant's] lawsuit . . . has to do with . . . false statements that [Appellee] made in Pennsylvania to other Pennsylvania residents as well as [to] people in other states." N.T., 2/17/22, at 3. Counsel emphasized that Appellee has "a long-term residency" in Pennsylvania and has been living there "for an

---

[6] Appellee filed preliminary objections to Appellant's complaint on October 18, 2021, in which she raised, *inter alia*, the legal insufficiency of the pleadings and the pendency of a prior action, *i.e.*, the Nevada civil suit. **See** Appellee's Preliminary Objections to Appellant's Complaint, 10/18/21, at 3-4 (unpaginated).

extended period of time." ***Id.*** at 4. Although Appellant's counsel conceded that several of the proposed witnesses live in Nevada and one lives in Connecticut, they insisted that the two arguably most important witnesses — Appellee and Mr. Jaigirdar — live in Pennsylvania.[7] ***See id.*** at 5-8. Further, Appellant's counsel argued that Appellee provided "absolutely no analysis . . . on [Nevada] even being an appropriate forum." ***Id.*** at 12-13.

Appellee's counsel responded by emphasizing Appellant subpoenaed eight witnesses in Nevada, including individuals from the Las Vegas Police Department, "undoubtably, one of the most crucial witnesses in either case[,]" and "request[ed] the release of medical record for facilities in Nevada." N.T. at 14. Counsel also noted the Pennsylvania action, which identified Appellee by name, undermined her ability to "bring the Nevada action as a Jane Doe Plaintiff[.]" ***Id.*** at 15. Counsel argued: "There is a severe chilling effect on a victim of alleged sexual assault if the accused can simply turn around, run to another jurisdiction, [and] publicly out that person[.]" ***Id.*** Lastly, counsel for Appellee asserted that because "the defense of truth will be resolved" in both actions, there is a possibility of "inconsistent results." ***Id.*** at 18.

That same day, the trial court entered an order granting Appellee's petition to dismiss based upon *forum non conveniens*, without prejudice to

_____

[7] Appellant's counsel pointed out that Appellee's sister, Jillie Wimmer, and Appellee's current boyfriend, Matthew Posteraro, also live in Pennsylvania. N.T. at 7.

Appellant to refile the defamation action in Nevada. Order, 2/17/22. This timely appeal follows.[8]

## II. Issue on Appeal

Appellant raises a single issue on appeal:[9]

Whether the [t]rial [c]ourt erred when it dismissed [Appellant's] action based on *forum non*[ ]*conveniens* by misstating or ignoring the record evidence, failing to follow the proper procedural requirements on the Petition, and by making unwarranted factual and legal presumptions?

Appellant's Brief at 5.

## III. Standard of Review & Relevant Law

We review a trial court's order dismissing an action based upon the doctrine of *forum non conveniens* for an abuse of discretion. **Lyndes v. Penn Central Corp.**, 254 A.3d 725, 732 (Pa. Super. 2021) (citation omitted). It is well-established that "[a]n abuse of discretion occurs if the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." **McConnell v. B. Braun Med. Inc.**, 221 A.3d 221, 228 (Pa. Super. 2019) (citation & quotation marks

---

[8] Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court then filed a responsive opinion on March 31, 2022.

[9] Although Appellant listed 17 separate issues in his Rule 1925(b) statement, they are merely sub-claims relating to his challenge to the court's dismissal of his complaint. **See** Appellant's Concise Statement of Errors Complained of on Appeal, 3/21/22, at 1-3.

omitted). Moreover, "[a] trial court's decision will stand if there is any basis in the record to support it." *Id.*

The doctrine of inter-jurisdictional *forum non conveniens* is codified at 42 Pa.C.S. § 5322:[10]

> **(e) Inconvenient forum. —** When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S. § 5322(e). The burden is on the party seeking to dismiss the action to establish that the matter should be heard in another jurisdiction. *McConnell*, 221 A.3d at 228.

When considering whether dismissal is warranted pursuant to Section 5322(e),

> [t]he two most important factors the trial court must apply . . . are [1] the plaintiff's choice of forum should not be disturbed except for weighty reasons, and [2] there must be an alternate forum available or the action may not be dismissed.

*Hovatter v. CSX Transportation, Inc.*, 193 A.3d 420, 424 (Pa. Super. 2018). "A plaintiff's choice of forum is entitled to deference, but to a somewhat lesser degree when the plaintiff's residence and place of injury are located somewhere else." *McConnell*, 221 A.3d at 227. *See Wright*, 215 A.3d at 992 ("[W]hen the home forum has been chosen, it is reasonable to

---

[10] "When the matter involves a request to transfer venue from one county to another county in Pennsylvania based on *forum non conveniens*, Pa.R.C.P. 1006(d)(1) controls." *Wright v. Consolidated Rail Corp.*, 215 A.3d 982, 992 (Pa. Super. 2019). Under Rule 1006(d)(1), the "defendant bears a heavier burden" and must establish that the "plaintiff's choice of forum is oppressive and vexatious for the defendant." *Id.*

assume that this choice is convenient[; w]hen the plaintiff is foreign, however, this assumption is much less reasonable.") (citation omitted).

> To determine if "weighty reasons" overcome the deference afforded to a plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved in the case. The private factors include:
>
> > the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and **all other practical problems that make trial of a case easy, expeditious and inexpensive**.
>
> As to the public factors, trial courts must take into account several circumstances, including that:
>
> > administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a **community which has no relation to the litigation**. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
>
> With respect to these factors, a defendant must show that the plaintiff's chosen forum is inconvenient to the **defendant**. A defendant cannot merely assert that dismissal is warranted because the chosen forum is inconvenient to the plaintiff in some way. . . .

*McConnell*, 221 A.3d at 227–28 (citations & footnote omitted; some emphases added).

Furthermore, we emphasize that even if the trial court determines the private and public factors establish the chosen forum is inconvenient, "dismissal of the action is not permitted if it is barred in the alternative forum."

*Poley v. Delmarva Power & Light Co.*, 779 A.2d 544, 547 (Pa. Super. 2001) (vacating order dismissing action based on *forum non conveniens*; although trial court found Philadelphia County was inconvenient forum, action could not be refiled in Maryland because non-waivable statute of limitations period had expired).

## IV.    Trial Court Opinion

With this background in mind, we first consider the trial court's decision. The court found that both the private and public factors weighed in favor of dismissal of Appellant's defamation action without prejudice to be refiled in Nevada. *See* Trial Ct. Op. at 10-12.

With regard to private factors, the trial court emphasized that "[t]he encounter between the parties" occurred at a nightclub in Las Vegas, Nevada, "[a] criminal investigation was conducted by the Las Vegas . . . Police Department, and Appellee received a sexual assault examination at the Nevada University Medical Center." Trial Ct. Op. at 10. Accordingly, all of the police officers and medical providers with whom Appellee discussed the allegations are in Nevada. *Id.* Moreover, the fact witnesses, who are "mostly Appellee's close family and friends, . . . primarily reside in Nevada." *Id.* The court discounted Appellant's argument that Mr. Jaigirdar was a significant witness, whose presence in Pennsylvania "tip[ped] the scales." *Id.* at 10-11. Rather, it noted that Appellee "did not admit to making any statements to him" concerning her belief that Appellant had drugged her in both her Nevada lawsuit, and her belated responses to Appellant's interrogatories. *Id.* Further,

the court found that there was no evidence Appellee made **any** purported defamatory statements in Pennsylvania. *Id.* at 11. Moreover, because the truth of the alleged defamatory statements is a defense, the court also determined there was a "potential for inconsistent results if the matters were heard by fact finders in two different jurisdictions." *Id.* Thus, the trial court concluded that "[p]ractical considerations exist [in] having one jurisdiction hear both civil actions which arise from the parties['] encounter with each other in Las Vegas, Nevada[,]" and involve the same witnesses and same factual dispute. *Id.*

With regard to public factors, the trial court again emphasized the "appropriateness of having one forum decide both civil actions[,]" noting "[t]he State of Nevada is where the incident took place, a criminal investigation was conducted, and a sexual assault examination was performed." Trial Ct. Op. at 11. Further, the court emphasized that the parties "previously attended mediation . . . [and] retained attorneys" in Nevada. *Id.* at 12. Finally, the court acknowledged Appellee's argument that "Appellant brought this defamation claim in Pennsylvania as a means of avoiding Nevada's Anti-SLAPP law that protects statements that are privileged[.]" *Id.*

Lastly, the trial court determined the state of Nevada provides an alternate forum for Appellant's action. *See* Trial Ct. Op. at 12. First, the court recognized a defamation claim in Nevada is subject to a two-year statute of limitations; thus, if Appellee made the purported defamatory statements in

2019, Appellant's claim would now be time-barred. ***See id.*** Nevertheless, the court noted that that Nevada "adopted the common law discovery rule" so that the limitations period "does not begin to run until the date on which a claimant actually discovers an injury or loss rather than the date when the wrongful act . . . took place." ***Id.*** Citing an unpublished Nevada Appeals Court decision, the trial court observed "the Nevada courts [have] held that the discovery rule could apply to defamation and false light claims." ***Id.***, *citing* ***Jackson v. Las Vegas Review Journal***, 2018 WL 4173192 (Nev. App. 2018). Consequently, because Appellant alleged in his complaint that he "first became aware of the defamatory statements on **August 18, 2021**[,]" the court concluded Appellant could file a defamation action in Nevada before the expiration of the statute of limitations; thus, an alternate forum was available. ***Id.*** (emphasis added).

## V. Analysis

On appeal, Appellant challenges the trial court's determinations that both the public and private factors weigh in favor of dismissal of his action filed in Pennsylvania, and maintains that the trial court failed to follow proper procedure pursuant to Pa.R.C.P. 206.7. Appellant also contends Appellee failed to establish an alternate forum for his defamation action is available.

### a) Private Factors

With regard to the private factors, Appellant first challenges the trial court's findings that there was **no evidence** showing (1) Appellee made any defamatory statements in Pennsylvania, and (2) Appellee made any

defamatory statements to Mr. Jaigirdar. Appellant's Brief at 27-29. Rather, he claims both findings are refuted by the record. *Id.* In support, he points to Appellee's belated responses to his discovery requests, and the failure of her attorney to contest both his attorney's and the trial court's characterizations at the hearing. *See id.* Indeed, Appellant emphasizes that, in Appellee's response to his request for admissions, she admitted the following: "You told Thasin Jaigirdar that [y]ou believed [Appellant] drugged [y]ou after [y]ou encountered [Appellant] at the Omnia Nightclub in Las Vegas Nevada[.]" *See* Appellant's Answer in Opposition to Appellee's Petition to Dismiss Appellant's Complaint Based Upon the Doctrine of *Forum Non Conveniens* (Appellant's Answer), 11/15/21, at Exhibit 2, Appellant's First Set of Requests for Admission to Appellee (Appellant's Request for Admission), at ¶ 4; Appellant's Supplemental Answer at Exhibit A, Appellee's Responses to Appellant's First Set of Requests for Admission (Appellee's Response to Request for Admission), at ¶ 4 ("Factual admitted, but denied insofar as the Request seeks an admission of any legal conclusion that [Appellant] is attempting to draw therefrom."). Thus, Appellant maintains the court's determination that Mr. Jaigirdar's proposed testimony did not "tip the scales" in favor of proceeding in Pennsylvania is based upon a false premise. *See* Appellant's Brief at 29.

Appellant further argues the trial court failed to consider all relevant private factors — include the willingness of potential witnesses to testify and a comparison of the costs to obtain attendance of all potential witnesses —

and ignored the fact that two additional fact witness (Appellee's sister, Wimmer, and boyfriend, Posteraro) to whom Appellee admitted making defamatory statements, both live in Pennsylvania. *See id.* at 29, 37.

Lastly, Appellant criticizes the trial court's "unwarranted presumptions" concerning the necessity of police and medical evidence located in Nevada, as well as the relevance of Appellee's Nevada lawsuit to his defamation action. *See* Appellant's Brief at 34-35. Appellant insists that Appellee's response to his request for interrogatories acknowledges she has no "documentary evidence — in Nevada or anywhere else — which would establish or suggest that she was in fact drugged." *Id.* at 36. Moreover, he emphasizes that, in her Nevada lawsuit, Appellee did **not** assert that he drugged her. *Id.* at 34. Thus, "the alleged 'truth' of the defamatory statement" — that Appellant drugged Appellee — would not be determined in the Nevada action, and accordingly, there was no "risk of inconsistent results between the two forums[.]" *Id.*

Upon our review, we detect no abuse of discretion in the trial court's consideration of the private factors supporting its determination that "weighty reasons" exist to disturb Appellant's choice of forum. *See Hovatter*, 193 A.3d at 424.

First, we agree with Appellant that Appellee admitted in her discovery response that she told Mr. Jaigirdar she believed Appellant drugged her.[11] **See** Appellee's Response to Request for Admission at ¶ 4. Nevertheless, this admission does not undermine the trial court's ruling, nor "tip the scales" in favor of venue in Pennsylvania. As the trial court opined: "This case involves fact witnesses who are **mostly** Appellee's close family and friend, and **primarily reside in Nevada**." Trial Ct. Op. at 10 (emphases added). While Appellant emphasizes that two additional witnesses — Ms. Wimmer and Mr. Posteraro — live in Pennsylvania, he ignores the fact that the **majority** of witnesses he himself intended to subpoena live in Nevada. **See** Appellee's Motion for Protective Order at Exhibit C (Appellant's notice of intent to serve subpoenas to following witness with Nevada addresses: Las Vegas Metropolitan Police Department, Adrian Arellano, Arthur Chung, Jason Hahn, Jennifer Hahn, Jonalee Shappley, Judith Fahrner, Timothy Fahrner, and William Tell Shappley, IV).

---

[11] The trial court's confusion appears to be based on Appellee's response to Appellant's request for interrogatories. Appellant requested Appellee "[i]dentify all individuals with whom [she] discussed [her] Allegations with and provide a brief description of each of these discussions." Appellant's Supplemental Answer at Exhibit B, Appellee's Answer to Appellant's First Set of Interrogatories (Appellee's Answer to Interrogatories) at Responses ¶ 1. Appellee responded, *inter alia*: "Generally, I asked questions about the events of September 21, 2021 or September 22, 2021 to Thaisin Jaigirdar." **Id.** However, as Appellant asserts, Appellee did concede, in her response to Appellant's request for admission, that she told Mr. Jaigirdar she believed Appellant drugged her. **See** Appellant's Request for Admission at ¶ 4; Appellee's Response to Request for Admission at ¶ 4.

Next, our review of the record reveals no evidence or admission by Appellee that she made any defamatory statements **in Pennsylvania**. Indeed, Appellant attempts to create a fact out of inferences — he reasons that because (1) Appellee has lived in Pennsylvania since 2020, and (2) at least three people with whom she admits she discussed her belief that Appellant drugged her live in Pennsylvania, then (3) she must have made these statements while in Pennsylvania. However, he ignores the fact that there is no evidence or admission by Appellee that she did so. In his discovery requests, Appellant never inquired "where" or "when" Appellee made the alleged defamatory statements about him — thus, he merely speculates that she did so only after she moved to Pennsylvania. Indeed, in his own brief, Appellant asserts that it "could be inferred" Appellee made defamatory statements in Pennsylvania. **See** Appellant's Brief at 31. Accordingly, Appellant's reliance on this non-fact to support his argument is misplaced.

We also reject Appellant's claim that Appellee's failure to object to **characterizations** of the evidence made by his own attorney and the trial court during the hearing constitutes proof that Appellee made defamatory statements in Pennsylvania. **See** N.T., 2/17/22, at 3 (Appellant's attorney arguing "the crux of [Appellant's] lawsuit . . . has to do with . . . false statements that [Appellee] has made in Pennsylvania to other Pennsylvania residents as well as people in other states"), 13-14 (trial court asking Appellee's counsel "why, in light of the fact that statements were made in Pennsylvania and [Appellee] has lived here since 2020 . . . should [the case]

not proceed forward in this jurisdiction?"). Appellee's counsel was under no obligation to object to these inferences, and Appellant presents no authority to the contrary.

Next, although Appellant criticizes the trial court for failing to address certain private factors, we emphasize that "it is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is not an exercise in counting numbers." ***Burnett v. Penn Cent. Corp.***, 250 A.3d 1240, 1253 (Pa. Super. 2021) (citation & quotation marks omitted). Here, it is evident the court considered primarily the "ease of access to sources of proof[,]" since most of the potential witnesses live in Nevada, and the "practical problems" of litigating an action in Pennsylvania, when a previously filed suit in Nevada involves the same facts. ***See McConnell***, 221 A.3d at 227 (citation omitted).

Lastly, Appellant's attempt to distinguish the factual predicate of the Nevada action from the factual predicate of this action is specious. Appellant emphasizes his defamation claim is based upon Appellee's statements to others that he **drugged** her — a "fact" she does not aver in her Nevada action. ***See*** Appellant's Brief at 34. Therefore, he claims "the Nevada actions does not require a determination of the alleged 'truth' of the defamatory statement that is the focus of this defamation action." ***Id.***

While it is true Appellee did not explicitly aver Appellant "drugged" her in her Nevada complaint, she did aver the following: (1) after being left alone with Appellant in a nightclub, Appellant "mixed an alcoholic drink for" her; (2)

- 19 -

Appellant told her he does not drink; (3) "[a]fter having drinks mixed by [Appellant, Appellee] had no memory of leaving" the nightclub with him or going to his condominium; (4) Appellee woke up the next morning in Appellant's bed, wearing only her bra; (5) she was "really out of it[,]" and "felt a bodily sensation she had never previously experienced[;]" and (6) Appellant does not deny they had sexual intercourse. **See** Amended Nevada Complaint at ¶¶ 22-23, 27-28, 30-31 (quotation marks omitted). Thus, she insists Appellant had sex with her while she was incapable of consenting. **See id.** at ¶¶ 31-33. Appellee clearly implies that Appellant slipped something into the drink that he mixed for her and she imbibed, which caused her to lose consciousness. Moreover, Appellant's focus on Appellee's claim that he **drugged** her, without any reference to her claim that he **raped** her, appears to be solely to distance the defamation claim from the sexual assault claim. It is evident, however, that both lawsuits rest upon the parties' actions on the night of September 21-22, 2019. Thus, Appellant's attempt to distinguish the Nevada action fails.

Similarly, Appellant downplays the necessity of witnesses from the Las Vegas Police and Nevada medical providers by noting that Appellee acknowledged she has no documentary evidence to support her allegation that he drugged her. Appellant's Brief at 36, *citing* Appellee's Answer to Interrogatories at Responses ¶ 9 (when asked to identify documents or communications that suggest she was drugged, Appellee responded, "I base the truthfulness of my allegations . . . on what I believe and remember to

have occurred that evening and my knowledge of myself, my own body, based on my experiences."). Nevertheless, Appellant ignores the fact that **he** filed a notice of intent to subpoena the Las Vegas Police Department. **See** Appellee's Motion for Protective Order at Exhibit C. Whether or not there exists any evidence that Appellant drugged Appellee, her statements to the police, as well as her medical records from the sexual assault exam, are clearly relevant.

Accordingly, we conclude the trial court did not abuse its discretion in weighing the private factors supporting dismissal of the action in Pennsylvania.

### b) Public Factors

With regard to the relevant public factors supporting a change of venue, Appellant similarly argues the trial court misstated evidence, made unwarranted presumptions, and ignored certain factors. **See** Appellant's Brief at 38-41. First, Appellant insists the court ignored the fact that Appellee currently lives in Pennsylvania, and intends to work here for the "foreseeable future." **Id.** at 38. Although Appellee claims she will eventually return to Nevada, Appellant emphasizes that a person "can have multiple residences[.]" **Id.** He argues: "There simply was no reason for the [t]rial [c]ourt to award more weight to the location where [Appellee] plans to be years from now than to where she resides now and will be residing for the foreseeable future . . . , especially considering that there was no record evidence suggesting that the Pennsylvania matter would not conclude before she left." **Id.** at 39.

Appellant also summarily rejects the trial court's determination that it is more appropriate to decide both actions in Nevada because "judicial resources and a jury will be called on in the Nevada Action that will determine facts that are outcome determinative [in] the Pennsylvania Action[.]" Appellant's Brief at 39. He insists the Nevada action should not be used as a "public interest factor" favoring dismissal, "[f]or the same reasons [it] was not appropriate to consider [the Nevada action] as a private factor favoring dismissal[.]" *Id.* He also points out that the trial court did not consider which state law would apply. *See id.* at 40. However, he concedes that because Appellee made statements in different states, there would always be a conflict of law analysis regardless of where the action is litigated. *See id.* at 41.

Lastly, Appellant maintains the trial court improperly relied on Appellee's policy argument that he filed the action in Pennsylvania to avoid Nevada's Anti-SLAPP law. *See* Appellant's Brief at 40. He emphasizes there is no evidence he filed the Pennsylvania action to avoid the statute, or that the statute would even apply to the facts alleged in his complaint. *Id.*

Again, we conclude the trial court did not abuse its discretion in determining the relevant public factors supported dismissal of the action in Pennsylvania. The trial court clearly focused on the community's relation to the litigation, noting that the underlying incident between the parties, the ensuing criminal investigation, and the sexual assault examination all took place in Nevada. *See McConnell*, 221 A.3d at 227. Moreover, the parties attended a mediation in Nevada concerning Appellee's lawsuit — which was

when Appellant claims he first learned of the alleged defamatory statements. The fact that Appellee, and a few other witnesses, currently live in Pennsylvania is not dispositive.[12]

Appellant also repeats his claim that the issues raised in the Nevada action are not "outcome determinative" of the Pennsylvania action. **See** Appellant's Brief at 39. However, for the reasons discussed **supra**, we conclude that the two actions are factually related, so that resolution of the Nevada action may be dispositive with regard to Appellant's defamation claim. Moreover, while the trial court acknowledged Appellee's assertion that "Appellant brought this defamation claim in Pennsylvania as a means of avoiding Nevada's Anti-SLAPP law[,]" the court did not rely on this claim in its analysis. **See** Trial Ct. Op. at 12. Upon our review, Appellant has not established the trial court abused its discretion when it determined the citizens of Nevada have a stronger connection to Appellant's litigation than the citizens of Pennsylvania.

### c) Pa.R.C.P. 206.7

Intertwined with his challenge to the trial court's consideration of both the relevant private and public factors, Appellant contends that trial court

---

[12] We decline to address Appellant's "double negative" assertion that there is **no** evidence suggesting the Pennsylvania case "would **not** conclude before [Appellee] left" the jurisdiction. **See** Appellant's Brief at 39 (emphasis added). Of course, the opposite is also true — there is no evidence the case would be resolved before she moved back to Nevada.

failed to adhere to the requirements of Pennsylvania Rule of Civil Procedure 206.7.  The Rule provides, in relevant part:

> (c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court.  If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision.

Pa.R.C.P. 206.7(c).

Here, Appellant emphasizes that he filed an answer in opposition to Appellee's petition to dismiss, in which he denied all Appellee's averments of fact and made several factual averments himself.  *See* Appellant's Brief at 31. Because Appellee did not proceed to take depositions, Appellant insists that the trial court should have deemed admitted all the denials and averments of fact in his answer pursuant to Rule 206.7(c).  *Id.*  He claims these "admissions" include the following:  (1) that "it could be inferred" Appellee made defamatory statements about Appellant in Pennsylvania; (2) that the Pennsylvania and Nevada actions "do **not** relate to or arise from the same set of operative facts, transactions, and occurrences;" and (3) that he "**did not** have sexual intercourse with [Appellee] while she as incapable of consent." *See id.* at 31-32 (emphases added & quotation marks omitted).

We conclude this argument has not been properly preserved for appellate review.  In neither his response to Appellee's motion for a protective order, nor during argument on the petition to dismiss, did Appellant assert that the trial court must deem his denials and averments of fact admitted

pursuant to Rule 206.7. Rather, he raised it for the first time in his Rule 1925(b) statement. Thus, we conclude the claim is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Furthermore, even if this claim were not waived, we would conclude no relief is warranted. First, Appellant attempts to undermine the trial court's ruling by insisting the court should have considered the "fact" that "it could be inferred" Appellee made some defamatory statements in Pennsylvania. *See* Appellant's Brief at 31-32. However, the court did not make a finding to the contrary; rather, the court concluded there was **no evidence** Appellee made any defamatory statements in Pennsylvania. *See* Trial Ct. Op. at 5. Moreover, even if Appellee did make some statements in Pennsylvania, Appellant does not claim she made **all** of them while residing in Pennsylvania, or to Pennsylvania residents. Thus, Nevada still remains the more convenient forum.

Second, to the extent Appellant insists the Nevada and Pennsylvania actions are not based on the same facts, we conclude the trial court was more than capable of reviewing the two lawsuits and making that determination itself. Thus, this "fact" is not really a "fact" at all. Lastly, Appellant's assertion that he did not have sexual intercourse with Appellee while she was incapable of consent is the subject of the Nevada litigation. For purposes of the defamation action, it is not a "fact" that either supports or disputes Appellee's claim that Nevada is a more convenient venue for the action. Accordingly,

even if Appellant's Rule 206.7 claim were not waived, we would conclude he is entitled to no relief.

Therefore, we conclude Appellant has failed to establish the trial court abused its discretion when it determined the relevant private and public factors provided "weighty reasons" to disturb his choice of forum. *See Hovatter*, 193 A.3d at 424. We note, too, that Appellant downplays the fact that Pennsylvania is not **his** home forum; indeed, there is no evidence in the record that he has any connection to Pennsylvania. *See Wright*, 215 A.3d at 992 (assumption that plaintiff's choice of forum is convenient is "much less reasonable" when plaintiff is foreign to forum).

### d) Availability of Alternate Forum

Appellant also argues that the trial court improperly dismissed the Pennsylvania action because Appellee failed to establish there was an alternate forum available. *See* Appellant's Brief at 44-47. Indeed, he maintains Appellee neglected to address this issue at all in her petition or at oral argument — although it was her burden to do so — but instead, the trial court provided a *post hoc* argument in its opinion. *Id.* at 45. Although the court recognized that defamation actions are subject to a two-year statute of limitations in Nevada, Appellant claims the trial court improperly relied upon an unpublished decision of the Nevada Appeals Court which stated that "the discovery rule **could** apply to defamation and false light claims." *Id.* at 46. Appellant refers to Nevada Rule of Appellate Procedure 36 which prohibits the citation of "**unpublished dispositions** issued by the Court of Appeals . . . **for**

**any purpose**." *Id.*, *citing* Nev.R.App.P. 36. Lastly, Appellant emphasizes that, unlike other movants in these types of inter-jurisdictional *forum non conveniens* appeals, Appellee did **not** enter a stipulation agreeing to waive any potential technical defenses (such as the statute of limitations) in Nevada. *See id.* at 47. Absent evidence that Nevada will provide an alternate forum for this action, Appellant insists the court erred in dismissing the Pennsylvania complaint.

Preliminarily, we note there is no dispute that a defamation claim is subject to a two-year statute of limitations in Nevada. *See* Nev.Rev.Stat. § 11.190(4). However, the Supreme Court of Nevada has recognized that the discovery rule may operate to toll a limitations period until the injured party knew or, through reasonable diligence, should have known the "facts that would put a reasonable person on inquiry notice of his cause of action." *Massey v. Litton*, 669 P.2d 248, 252 (Nev. 1983) (applying discovery rule in medical malpractice cases). Although we have not uncovered any published Nevada Supreme Court opinion applying the discovery rule to a defamation or false light claim, the Court has applied the discovery rule, generally, in tort actions, explaining "the time limits do not commence and the cause of action does not 'accrue' until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the damage or injury." *See G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997) (citation & footnote omitted).

Moreover, the Nevada Supreme Court explicitly stated in an unpublished disposition that "a cause of action [for defamation] does not arise until the party discovers it." *Lahren v. Nevada System of Higher Educ.*, 238 P.3d 831, *1 (Nev. Sept. 8, 2008) (unpublished disposition) (reversing judgment on the pleadings in part and remanding because question of fact remained as to when plaintiffs discovered alleged defamatory statements). The federal district court in Nevada later relied on the holding in *Lahren* in two unpublished decisions. *See Nutri Pharms. Rsch., Inc. v. Stauber Performance Ingredients, Inc.*, 2021 WL 6773089, at *2 (D. Nev. 2021) (denying defendant's motion to dismiss defamation claim, as barred by statute of limitations, based on comment made more than two years earlier; concluding it was "possible that the alleged defamatory comment was published in a secretive manner, which would render the discovery rule applicable"); *Grand Canyon Skywalk Dev., LLC v. Cieslak*, 2014 WL 2123255, at *2 & n.11 (D. Nev. 2014) (denying defendant's motion to dismiss defamation claim, as barred by statute of limitations, based on memorandum issued more than two years earlier; complaint alleged, and defendants did not dispute, that plaintiffs did not learn of alleged defamatory publication until April 8, 2011, within two years of filing complaint).

As Appellant points out, the trial court relied on a different unpublished disposition of the **Nevada Court of Appeals** when it addressed this issue in its opinion. *See* Trial Ct. Op. at 12, *citing Jackson*, 2018 WL 4173192. As noted above, Nevada Rule of Appellate Procedure 36(c)(3) expressly prohibits

the citation, "for any purpose," of "unpublished dispositions issued by the **Court of Appeals**[.]" Nev.R.App.P 36(c)(3) (emphasis added). Thus, the court's reliance on **Jackson** was misplaced. However, the case upon which we rely is an unpublished disposition of the **Nevada Supreme Court**.

We recognize that Rule 36 further provides that "[a]n unpublished disposition, while publicly available, does not establish mandatory precedent except in a subsequent stage of a case in which the unpublished disposition was entered[.]" Nev.R.App.P 36(c)(2). There is an exception to this general rule which permits "[a] party [to] cite for its persuasive value . . . an unpublished disposition issued by the **Supreme Court on or after January 1, 2016**." Nev.R.App.P. 36(c)(3) (emphasis added). Although the **Lahren** disposition was issued prior to January of 2016, it was later cited, and relied upon, by two separate federal district court judges for the proposition that the discovery rule tolls the statute of limitations for defamation claims. Thus, based upon our research, we conclude Nevada provides an alternate forum for Appellant's action.[13] **See Hovatter**, 193 A.3d at 424 ("[I]f there is any

---

[13] We recognize that unlike many of the other inter-jurisdictional forum *non conveniens* cases, Appellee did **not** stipulate that she would waive any statute of limitations defense in Nevada. **See Lyndes**, 254 A.3d at 730; **McConnell**, 221 A.3d at 225; **Hovatter**, 193 A.3d at 422. Indeed, this Court has explained: "A stipulation made by a defendant that he or she will submit to service of process and not raise the statute of limitations as a defense has been accepted by the courts as eliminating the concern regarding the availability of an alternate forum." **Jessop v. ACF Indus., LLC**, 859 A.2d 801, 803 (Pa. Super. 2004). Nevertheless, there is no decision **requiring** a defendant seeking change of venue to provide such a stipulation before
*(Footnote Continued Next Page)*

basis for the trial court's decision, the decision must stand.") (citation omitted).

## VI.    Appellee's Request for Attorney Fees

Appellee requests that this Court award her attorney fees based upon Pa.R.A.P. 2744.  The Rule permits an appellate court to award "a reasonable counsel fee . . . if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are imposed is dilatory, obdurate or vexatious."  Pa.R.A.P. 2744(1).  Further, "[i]n determining the propriety of such an award, we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit[; r]ather, it must be found that the appeal has **no basis in law or fact**."  *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 878 (Pa. Super. 2006) (citation omitted & emphasis added).

We decline to award counsel fees in this matter.  While we conclude Appellant is not entitled to relief, we do not agree his arguments have "no basis in law or fact."  *See U.S. Claims, Inc.*, 914 A.2d at 878.  Moreover, despite Appellee's protestations, our review of the record does not reveal Appellant's conduct to be "dilatory, obdurate or vexatious."  *See* Pa.R.A.P. 2744(1).

## VII.  Conclusion

---

dismissal is granted, so long as there is "an alternate forum available."  *See Hovatter*, 193 A.3d at 424 (citation omitted).

Therefore, because Appellant has failed to establish the trial court erred or abused its discretion by dismissing his complaint without prejudice to refile in the state of Nevada based upon the doctrine of *forum non conveniens*, we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022